645 So.2d 1184 (1994)
Barbara Ann MIGUEZ, Plaintiff-Appellant,
v.
SOUTHERN PACIFIC TRANSPORTATION COMPANY, et al., Defendant-Appellee.
No. W94-323.
Court of Appeal of Louisiana, Third Circuit.
October 5, 1994.
Rehearing Denied December 14, 1994.
Lawrence N. Curtis, Lafayette, for Barbara Ann Miguez.
John Edmund McElligott, Jr., Kyle Liney Mark Gideon, Lafayette, for Southern Pacific Transp. Co., et al.
Michael Dean Hebert, Lafayette, for City of Lafayette.
Arthur I. Robison, Lafayette, for State, Dept. of Transp. and Development.
Before DOUCET, SAUNDERS and WOODARD, JJ.
SAUNDERS, Judge.
Plaintiff sues individually and as tutrix of her minor child to recover damages arising *1185 from the death of her husband in a railroad crossing accident. Citing 23 U.S.C. § 409, et seq., the railroad and certain public party defendants filed a joint motion in limine to exclude all records and documents created or compiled in compliance with a Federal Railroad Safety upgrade program, in addition to reports of prior accidents at the crossing. The trial court granted defendant's motion, prompting our review of plaintiff's application for supervisory writs to the district court. We affirm in part, reverse in part, and remand with instructions.

PROCEEDINGS BELOW
Plaintiff, Barbara Ann Miguez, brought this action individually and as tutrix of her minor child to recover damages arising from the death of her husband, Scotty Lee Miguez, in a railroad crossing accident. The accident occurred on January 18, 1989, at the intersection of Tubing Road and Southern Pacific's main line track in Lafayette. Defendants include Southern Pacific Transportation Company; the State of Louisiana, Department of Transportation and Development; and the City of Lafayette.
In anticipation of trial, defendants moved that the court grant an Order precluding the introduction by plaintiff of "any testimony, documentary evidence, or reference" to the following:
(1) any and all reports, surveys, schedules, lists or data compiled for the purpose of identifying, evaluating or planning for the placement of active signalization at the Tubing Road railway grade crossing,
(2) all documents, correspondence, and testimony relating to the upgrade at the Tubing Road railway grade crossing, including, but not limited to:
(a) selection of site for inspection;
(b) on site inspection;
(c) work order;
(d) work to upgrade crossing; and
(e) final inspection and acceptance,
(3) all computer print outs and lists of data or reports compiled therefrom, and testimony relating to same generated by Louisiana Department of Transportation & Development as part of the system to identify perspective railway-highway crossings for upgrade and distribute the applicable Federal railroad safety funds, including but not limited to, railroad-highway crossing accident data, signage and traffic volume,
(4) all correspondence, reports, data, contracts, testimony, etc. prepared or compiled by Southern Pacific Transportation Company regarding the identification, evaluation, planning or placement of active signals at the Tubing Road crossing, including but not limited to:
(a) the GMO-84740 file;
(b) the schematic plan; and
(c) project notice file,
(5) reports of prior accidents at the Tubing Road crossing,
(6) DOT rating formula,
(7) "diagnostic" review,
(8) hazard index rating, AND
(9) correspondence between Southern Pacific Transportation Company and the Department of Transportation & Development.
Defendants' motion in limine further sought to bar the testimony of plaintiff's expert, John E. Baerwald, if his opinions were based in whole or in part upon information obtained from any reports, surveys, schedules or lists of dates compiled for the purpose of identifying, evaluating or planning for the placement of active signalization (which was the eventual recommendation of the study) at the crossing. The Motion further prayed that plaintiff's expert be instructed to disregard, in formulating his opinion, any information gathered or compiled with respect to the great crossing upgrade program.
Finally, defendants' motion requested that:
"[A]ny and all of plaintiff's witnesses, whether lay or expert, be instructed by appropriate Order of this Honorable Court to refrain from making any mention of or from asking any questions, directly or indirectly, or from suggesting or arguing to the jury, in any manner whatsoever, or from introducing, exhibiting or utilizing any reports, surveys, schedules, or lists of *1186 data compiled for the purpose of identifying, evaluating or planning for the placement of active signalization at the Tubing Road railway grade crossing."
The trial court granted the Motion verbatim. The reasons it assigned that are relevant to the present application follow.

WRITTEN REASONS
"This lawsuit involves a case for wrongful death filed by Barbara Ann Miguez individually, and on behalf her minor daughter Donna Marie Miguez. Plaintiff's husband and father respectively who was twenty-two years old at the time, died in a January 18, 1989 train-truck accident at the intersection of Tubing Road and Southern Pacific Transportation Company's main line track in Lafayette Parish between the City of Lafayette and the Town of Broussard.
"It is anticipated by the defendants that the plaintiff will attempt to introduce some or any evidence as previously described and they wish to exclude same based on a statute passed by the United States Congress in 23 U.S.C. s 409, et seq. The statute in question was passed by Congress to promote safety in all areas of railroad operations and to reduce railroad related accidents. In order to aid in the achievement of this goal, that particular statute directs the Secretary of Transportation to study and develop solutions to certain safety problems posed at various road grade crossings and other railroad/traffic intersections. This act provides federal funds to the various states in order to improve grade crossings in exchange for which each particular state agrees to accept certain conditions and obligations. They are required to make surveys and to study the various intersections and come up with conclusions as to whether or not a particular intersection should be upgraded based on accidents at that intersection and other available information. If, in fact, federal funds are used to upgrade a particular train/vehicle intersection, then certain rules come into play under the above named federal statute. In brief, the statute states that reports, surveys, schedules, lists or data complied for the purposes of identifying, evaluating or planning the safety enhancement of any potential accident site, hazardous roadway condition, or railroad/highway crossing pursuant to that statute in which federal funds will be used to upgrade same shall not be subject to discovery or be admitted into evidence in a federal or state court proceeding or considered for any purpose in any action for damages arising from any occurrence at a location mentioned or addressed in such reports, surveys, etc.
"In its memorandum, the defendants cited numerous federal cases which indicate that the purpose behind the statute was to facilitate honesty and candor in administrative evaluations of various highway safety hazards and to prohibit those federal records from being used as a tool by a plaintiff in private litigation such as we have here.
"The Court has had the opportunity to review all of the cases and numerous briefs provided by both parties in this matter. While the results may be somewhat harsh, the jurisprudence clearly indicates that Congress' purpose in passing this statute was to take whatever steps were necessary to protect the public from hazardous railroad/vehicle intersections. Each state is to collect the appropriate information and data to make decisions about which particular crossing should be upgraded or improved based on all of the information available. If all of this information were made available to the public and to any plaintiff in private litigation, the purpose of the statute would be defeated in that no documentation would ever be made for fear of it being used against that particular governmental entity at some later date.
"In the memorandum in opposition to defendants' Motion in Limine, the plaintiff recognized and did not oppose the defendants' motion except to argue that the defendants are not entitled to keep the jury from learning that prior to this accident, the State of Louisiana made a final decision to install signals and gates at this crossing. Plaintiff/Respondent agrees that all of the data, reports, etc. complied prior *1187 to the reaching of that decision are to be excluded but contends that the final decision to install gates and lights at this crossing should not be excluded and that the jury should be given this information at trial. Plaintiff submits that she is entitled to submit evidence of the ultimate or final decision to install the flashing lights and gates at the crossing since that decision was the end result (emphasis theirs) of the "identifying, evaluating, and planning" contemplated by the statute.
"If the Court were to accept the plaintiff/respondent's argument, this would defeat the logical purpose behind making the data inadmissible and undiscoverable in the first place. This Court is of the opinion that mover/defendants' Motion in Limine should be granted as prayed for.
"All costs of this matter shall be relegated to a trial on the merits.
"Judgment to be signed upon presentation.
"Lafayette, Louisiana this 18 day of October, 1993.
 /s/ Allen Babineaux
 DISTRICT JUDGE"
After judgment was rendered on the motion in limine, the Louisiana Supreme Court handed down its ruling in Wiedeman v. Dixie Electric Membership Corp., 627 So.2d 170 (La.1993), cert. den., ___ U.S. ___, 114 S.Ct. 2134, 128 L.Ed.2d 864 (1994) and granted writs in Rick v. State, Through the Department of Transportation & Development, 619 So.2d 1149 (La.App. 1st Cir.1993), which was subsequently reported at 630 So.2d 1271 (La. 1994). At this juncture, plaintiff reversed field to seek certain raw data, some of which was generated independently of or prior to the federal program but compiled in accordance with its enacting provisions. Her Motion for Reconsideration maintains that the recent actions of the Louisiana Supreme Court required the trial court's reconsideration of defendants' motion in limine.
With mixed feelings, the trial court denied the Motion.
"Plaintiff is now asking the Court to reconsider its decision of October 18, 1993 to grant defendant's Motion in Limine regarding information generated in connection with the Federal Highway Safety Act Grade Crossing Upgrade Program. A judgment was signed by this Court in accordance with that ruling.
"The plaintiff would now like the aforementioned ruling set aside alleging that it is contrary to the law, and in particular to the recent holdings by the Louisiana Supreme Court in Wiedeman vs. Dixie Electric Membership Corporation, 93-CC-1314 [627 So.2d 170] (La., November 29, 1993) and the decision by the First Circuit Court of Appeals in Rick vs. State, through the Department of Transportation and Development, 619 So.2d 1149 (La.App. 1st Cir., 1993), writ granted. Plaintiff has asked the Court to reconsider its ruling in light of those decisions or in the alternative to fix the delay for applying to the Louisiana Third Circuit Court of Appeals for Supervisory Writs.
"Both parties have filed very extensive briefs on this particular issue and the Court was provided with a copy of the Wiedeman case. The original decision written by this Court was painstakenly researched due the harsh nature of its decision. The Federal Highway Safety Act Grade Crossing Upgrade Act contained in 23 USC Section 409 et seq. is a statute which makes it very difficult for a plaintiff to obtain the necessary evidence and present same to the trier of fact in railroad crossing accidents where injury and/or death occur. That statute is very strict as to the discoverability and admissibility of evidence in these types of cases. The statute is clearly preemptive and it must be restrictively construed to prohibit only what is expressly proscribed. Plaintiff's reading of the Wiedeman case indicates that she is interested in presenting to the jury the accident reports, traffic counts, etc. compiled in connection with the Federal Railroad Grade Crossing Upgrade Program as well as the ultimate decision reached by the State through the Department of Transportation Development that the Tubing Road crossing should be upgraded with lights and gates. The Court, in reading the Wiedeman decision, does not feel that Wiedeman goes as far as the *1188 plaintiff would suggest. At pages 6 and 7 [627 So.2d at 173] of the Wiedeman decision, the Supreme Court stated the following:
`DOTD argues for an even more expansive interpretation that would protect data and raw facts, as well as the written documents incorporating the data. DOTD essentially asked the Court to transform a statue, [sic] which by its literal wording protects information complied for certain purposes, into one which protects all information in DOTD's possession. We refuse. The word complied indicates that information is collected into one document or composed from other sources. [See Webster's New Collegiate Dictionary, page 230, (1977).] The term suggests an end product, something more than unedited factual material. Moreover, privileges derogate from the system by which courts determine the truth and should not be expansively construed. United States v. Nixon, 418 U.S. 683, 709, 94 S.Ct. 3090, 3108, 41 L.Ed.2d 1039, 1065 (1974). Section 409 creates a privilege for compilations enumerated in the statute, but the privilege does not extend to reports and data gathered for or incorporated into such compilations.'
"This Court interprets the Wiedeman decision to hold that the end product and the compilation is privileged and cannot be placed into evidence. The end product of the survey conducted at the Tubing Road Crossing was the ultimate decision to install lights and gates. Unfortunately for the plaintiff, those lights and gates were not installed at the time of this accident; however, a literal reading of the statute in question and the cases interpreting same hold that such information is not admissible.
"Plaintiff's Motion for Reconsideration of the ruling in limine is hereby denied."
We granted writs to review the propriety of that ruling. W94-323 (La.App. 3d Cir. 4/19/94).

MERITS
Our reading of Wiedeman leads to a contrary conclusion as to raw data and other information prepared independent of or prior to the Federal Railroad Safety Program. Section 409 is "part of a comprehensive federal plan to promote highway safety which preempts our state's evidence law by creating a privilege for compilations enumerated in the statute; the privilege does not extend to reports and data gathered for or incorporated into such compilations." Wiedeman, supra, at 173. In accord, Rick v. State, through DOTD, 630 So.2d at 1276-77. Therefore, we vacate the judgment of the trial court to the extent it impinges on Wiedeman.
The net effect of Wiedeman, Rick, and today's conclusion is that the usual rules of discovery called for by our state's laws remain applicable to the extent they are not explicitly preempted by 23 U.S.C. § 409.
"To recapitulate, the following are discoverable and admissible:
(1) accident reports;
(2) traffic counts; and,
(3) other raw data collected by the Department.
The following are not:
(1) surveys to identify hazardous railroad crossings and improve them (Sec. 130);
(2) applications for federal assistance in replacing or rehabilitating highway bridges (Sec. 144);
(3) studies assigning priorities and schedules of projects for highway improvement (Sec. 152); and,
(4) other compilations made for developing highway safety construction projects which would utilize Federal-aid funds (Sec. 409)."
Wiedeman, supra, at 173.[1]
In arriving at this conclusion, we do not ignore authority cited by the Department of *1189 Transportation and Development in support of its position that even raw data in existence before enactment of the Federal Railroad Safety Program, but compiled afterwards in compliance with it, are unamenable to discovery.[2]
This state's discovery provisions are intentionally broad.
. . . . .
Parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action, whether it relates to the claim or defense of the party seeking discovery or to the claim or defense of any other party, including the existence, description, nature, custody, condition, and location of any books, documents, or other tangible things and the identity and location of persons having knowledge of any discoverable matter. It is not ground for objection that the information sought will be inadmissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence.
LSA-C.C.P. art. 1422.
Like the Supreme Court of this state, we are not persuaded that the unduly restrictive approach contemplated by defendants holds "due regard for the fact that rules of procedure implement the substantive law and are not an end in themselves." LSA-C.C.P. art. 5051. Moreover, it would seem unwise from a practical perspective to construe the laws to permit a party to unilaterally place off limits evidence so vital to the court's quest for the truth, simply by declaring that, although pre-existing, it had been compiled pursuant to 23 U.S.C. § 409, which we do not read to provide a drop rug under which a potentially liable party may conveniently conceal its prior misconduct. Certainly, the Federal Railroad Safety Program, laudable insofar as it seeks to prospectively reduce harm to railroad crossing motorists, was never intended to deny legitimate accident victims the only system of redress available to them.

DECREE
For the foregoing reasons, the interlocutory judgments of the trial court are affirmed in part and reversed in part. The trial court is directed to address the admissibility of each item of evidence in accordance with the criteria of 23 U.S.C. § 409, Wiedeman, and the foregoing. See Beecher v. Keel, 607 So.2d 549 (La.1992). Costs to await judgment on the merits.
AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.
NOTES
[1] We observe parenthetically that defendants might find it to be in their self-interest to utilize some of the materials privileged by 23 U.S.C. § 409 to comply with plaintiff's requests that are not so privileged, for they are binding and enforceable to the extent they do not conflict with the Federal provision's express limitations. See generally, LSA-C.C.P. arts. 1470 and 1471.
[2] See, e.g., Robertson v. Union Pacific R. Co., 954 F.2d 1433 (8th Cir.1992). But see, Lusby v. Union Pacific R. Co., 4 F.3d 639 (8th Cir.1993), which apparently struck expert testimony that was independently available only because it was obtained through forbidden channels.