682 So.2d 806 (1996)
Maria E. PALACIOS, Individually and on Behalf of her minor children, Jenny Garcia, Jose Garcia, Cynthia Palacios and Jennifer Palacios, PlaintiffsAppellees,
v.
LOUISIANA AND DELTA RAILROAD, INC., et al., Defendants Appellants.
No. W96-292.
Court of Appeal of Louisiana, Third Circuit.
October 17, 1996.
Writ Granted January 10, 1997.
Leonard Louis Levenson, New Orleans, Charles Benjamin Landry, New Iberia, for Maria E. Palacios.
John Felton Blackwell, New Iberia, for Louisiana and Delta Railroad, Inc., et al.
Stacey Allen Moak, Baton Rouge, for State of Louisiana through DOTD.
Keith Christian Armstrong, Baton Rouge, for City of Jeanerette.
Michael Patrick Corry, Lafayette, for National Security Fire & Casualty Co.
Kyle Liney, Mark Gideon, Lafayette, for Southern Pacific Transportation.
Before THIBODEAUX, COOKS and AMY, JJ.
THIBODEAUX, Judge.
This appeal prompts us to determine whether Congress' 1995 amendment to 23 U.S.C. § 409 overrules the Louisiana Supreme Court's decision in Wiedeman v. Dixie Elec. Membership Corp., 627 So.2d 170 (La. 1993), cert. denied, ___ U.S. ___, 114 S.Ct. 2134, 128 L.Ed.2d 864 (1994) and, thereby, precludes plaintiffs from discovering all records and documents compiled or collected by the State of Louisiana through the Department of Transportation and Development in compliance with Title 23. The trial court held that Section 409 does not shield the DOTD from complying with plaintiffs' discovery requests.
We affirm.

PROCEDURAL HISTORY
On May 2, 1994, Maria Palacios' 1987 Grand Am was purportedly struck by a train as Palacios drove northerly on Monnet Road in the City of Jeanerette, Louisiana. Palacios sought damages for the manifold injuries she allegedly sustained to her person and her property. Palacios lodged negligence and strict liability claims against, inter alia, the Louisiana & Delta Railroad, Inc. and the DOTD.
During discovery, the DOTD refused to produce certain documents and, likewise, refused *807 to answer certain interrogatories propounded by Palacios, viz.:
INTERROGATORY NO. 5
Please state whether or not, in connection with your motion for summary judgment, if you inquired, investigated, or otherwise researched the files of the "road maintenance engineer," and/or "agreements engineer," and/or William Shrewsbury, and/or Michael Morgan, and/or Virgin Minette in determining whether or not the DOTD had ever participated in any studies, programs, requests, complaints, suggestions, evaluations or any action whatsoever with respect to "safety enhancement" or signalization upgrading, or other implementation or requests for use or implementation of Federal Highway Safety Funds from the FHWA in connection with the Monnet Road Crossing.

INTERROGATORY NO. 11
Please state in detail the documents, files, records or materials which you reviewed, or which were otherwise reviewed or investigated on behalf of the DOTD, as well as the persons to whom inquiries were made, or performed any investigations, to establish that the DOTD has never had any involvement with safety enhancement, safety enhancement proposals, safety enhancement studies, upgrade of signalizations, improvement of signalizations, receipts of complaints, requests for improvements, investigations, diagnostic studies, on site inspections, or the like for grade crossing upgrade or improvement or safety enhancement to the Monnet Road crossing.

INTERROGATORY NO. 12
Please state whether or not the DOTD has ever calculated, determined, reviewed or been made aware of the New Hampshire Rating Index for the Monnet Road Crossing. If so, please state such rating or index.

REQUEST FOR PRODUCTION NO. 1
If the answer to the foregoing interrogatory is in the affirmative, please produce each and every document which corroborates or supports your response and/or which contains the index or rating, or the calculations of the same.

INTERROGATORY NO. 14
Please state whether or not the DOTD has ever conducted, participated in, had knowledge of, or been made aware of any traffic engineering studies, diagnostic reviews, on site inspections or similar information relative to the Monnet Road Crossing.

REQUEST FOR PRODUCTION NO. 2
If the answer to the preceding interrogatory is in the affirmative, please produce each and every such document which supports your response, including, but not limited to, each and every engineering study, diagnostic review, on site inspection or similar information.

INTERROGATORY NO. 15
Please state whether or not the DOTD has ever received any complaint, or any request for safety enhancement, or grade crossing improvement, or Federal Highway Safety Funds from the Town of Jeanerette, or any other person, firm or corporation with respect to the Monnet Road Crossing.

REQUEST FOR PRODUCTION NO. 3
Please produce each and every document which in any manner corroborates or supports your answer to interrogatories 15 & 16 above, including, but not limited to, each and every such complaint and/or request.

REQUEST FOR PRODUCTION NO. 4
Please produce each and every FRA Inventory or similar document which you possess, or have knowledge which relates to the Monnet Road Crossing.

REQUEST FOR PRODUCTION NO. 5
Please produce each and every accident history for the Monnet Road Crossing which you have, maintain, have knowledge, possess or otherwise control including but not limited to FRA accident reports or reporting forms, and/or State of Louisiana, Department of Public Safety & Corrections reports, and/or those maintained or possessed by the DOTD traffic and planning department.

*808 INTERROGATORY NO. 17

Please state, in detail, the procedure employed by, or followed by the DOTD, during the past 10 years, for determining which "off system" grade crossings would be considered for safety enhancement, and/or upgrade, and/or improvement, and/or which would be entitled to obtain or employ the use of Federal Highway Safety Funds for that purpose.

INTERROGATORY NO. 18
With respect to the Monnet Road Crossing, please state whether or not the DOTD ever:
(A) received any plans from the Southern Pacific Transportation Company and/or the Southern Pacific Railroad for safety enhancement, grade crossing improvement or active signalization;
(B) prepared any project notice or similar document or sent it to Southern Pacific, or sent it to any other person, firm or corporation;
(C) sent any request for final approval of any project notice or other document to the FHWA;
(D) prepared any work order for safety enhancement or crossing upgrade; or
(E) considered the crossing for safety enhancement or grade crossing improvements.

REQUEST FOR PRODUCTION NO. 7
Please produce each and every document which supports your response to the foregoing interrogatory including, but not limited to, each and every plan, project, notice, request for final approval, work order or similar documents.
By motion filed November 20, 1995, Palacios petitioned the court to compel the DOTD to comply with Palacios' discovery requests under La.Code Civ.P. art. 1469. The DOTD was ordered to show cause on December 15, 1995; therein, the DOTD urged that 23 U.S.C. § 409, as amended, precluded Palacios from discovering information sought by the foregoing production requests and interrogatories. Citing Wiedeman v. Dixie Elec. Membership Corp., 627 So.2d 170 (La.1993), cert. denied, ___ U.S. ___, 114 S.Ct. 2134, 128 L.Ed.2d 864 (1994) and Miguez v. Southern Pac. Transp. Co., 94-323 (La.App. 3 Cir. 10/05/94); 645 So.2d 1184, the trial judge ruled for Palacios by ordering the DOTD to respond to each of the foregoing interrogatories and production requests lodged by plaintiff. The DOTD assigns error to the district court's judgment.

LAW & DISCUSSION

Statutory Background
Congress enacted Title 23 to promote safety in all areas of railroad operations and to reduce railroad-related accidents. Congress intended to take whatever steps were necessary to protect the public from hazardous railroad/vehicle intersections. Therefore, implementing Congress' infamous "power of the purse," Title 23 offers each state federal funds to improve grade crossings and, in exchange for these funds, each state agrees to accept certain conditions and obligations; e.g., states are required to study and make surveys of the various intersections, and to develop conclusions as to whether a particular intersection should be upgraded based upon prior accidents at that intersection and all other available information. Indeed, if federal funds are used to upgrade a particular train/vehicle intersection, then certain Title 23 protections apply; to wit (and for our purposes), 23 U.S.C. § 409 provides that reports, surveys, schedules, lists or data compiled or collected for the purposes of identifying, evaluating, or planning the safety enhancement of any potential accident site, hazardous roadway condition, or railroad/highway crossing shall not be subject to discovery or be admitted into evidence in a federal or state court proceeding or considered for any purpose in any action for damages arising from any occurrence at a location mentioned or addressed in such reports, surveys, etc.

Wiedeman & Miguez: Cracks In The Dam
In Wiedeman, the supreme courtin response to the DOTD's assertion that Section 409 precludes discovery of both raw facts and written documents incorporating such raw factsobserved that:
DOTD argues for an even more expansive interpretation that would protect data and raw facts as well as the written documents *809 incorporating the data. DOTD essentially asks this Court to transform a statute, which by its literal wording protects information compiled for certain purposes, into one which protects all information in DOTD's possession. We refuse. The word "compiled" indicates that information is collected into one document or composed from other sources. [See Webster's New Collegiate Dictionary p. 230, (1977).] The term suggests an end product, something more than unedited factual material. Moreover, privileges derogate from the system by which courts determine the truth and should not be expansively construed. United States v. Nixon, 418 U.S. 683, 709, 94 S.Ct. 3090, 3108, 41 L.Ed.2d 1039, 1065 (1974). Section 409 creates a privilege for compilations enumerated in the statute, but the privilege does not extend to reports and data gathered for or incorporated into such compilations.

* * * * *
A rule which requires DOTD to divulge source data but not the end product fosters candor by shielding the state's self-critical evaluations and conclusions from outside scrutiny.
627 So.2d at 173 (emphasis ours).
In Miguez v. Southern Pac. Transp. Co., 94-323 (La.App. 3 Cir. 10/05/94); 645 So.2d 1184, this court harmonized its opinion with Wiedeman. Miguez observed that Louisiana's discovery provisions are very broad. It held that:
(2) The net effect of Wiedeman, Rick [v. State, Through Dept. of Transp. and Dev., 619 So.2d 1149 (La.App. 1st Cir.1993)], and today's conclusion is that the usual rules of discovery called for by our state's laws remain applicable to the extent they are not explicitly preempted by 23 U.S.C. § 409.
To recapitulate, the following are discoverable and admissible:
(1) accident reports;
(2) traffic counts; and,
(3) other raw data collected by the Department.
The following are not:
(1) surveys to identify hazardous railroad crossings and improve them (Sec. 130);
(2) applications for federal assistance in replacing or rehabilitating highway bridges (Sec.144);
(3) studies assigning priorities and schedules of projects for highway improvement (Sec.152); and,
(4) other compilations made for developing highway safety construction projects which would utilize Federal-aid funds (Sec.409).
Wiedeman, supra, at 173.
Following both Wiedeman and Miguez, Congress amended 23 U.S.C. § 409, through Pub.L. 104-59, § 323 (1995), and added the words "or collected." Now, Section 409 provides:
Notwithstanding any other provision of law, reports, surveys, schedules, lists, or data compiled or collected for the purpose of identifying, evaluating, or planning the safety enhancement of potential accident sites, hazardous roadway conditions, or railway-highway crossings, pursuant to sections 130, 144, & 152 of this title or for the purpose of developing any highway safety construction improvement project which may be implemented utilizing Federal-aid highway funds shall not be subject to discovery or admitted into evidence in a Federal or State court proceeding or considered for other purposes in any action for damages arising from any occurrence at a location mentioned or addressed in such reports, surveys, schedules, lists or data. (Emphasis ours).
The DOTD insists that Congress' amendment closes the Wiedeman and Miguez loopholes and prevents Palacios from discovering even raw data. As an issue of first impression, we are charged to determine whether Congress amended Section 409 with an intent to preclude all plaintiffs from discovering raw data. The answer to our inquiry ultimately hinges upon our construction of the term "collected."

*810 Raw Data Remains Discoverable
Astutely, the DOTD contends that collecting data is a preliminary step in the process of compiling data. Moreover, the agency reasons that "collect" and "compile" cannot be given the same meaning since such would render Congress' amendment activity "an exercise in futility." Indeed, the DOTD asserts that the amendment ipso facto evinces Congress' intent to change the effect of Section 409.
Though we are inclined to agree with the DOTD's sophistic reasoning (for it appeals to our common sensibilities), the law is clear: "Louisiana maintains a strong interest in fully and fairly adjudicating matters before its courts, and a concomitant need to facilitate open and evenhanded development of the facts underlying a dispute." Wiedeman, 627 So.2d at 173. It would be imprudent for us "to permit [the DOTD] to unilaterally place off limits evidence so vital to the court's quest for truth." Miguez, 645 So.2d at 1189. We, therefore, decline to construe Section 409 as a blanket under which the DOTD may conveniently conceal both raw and compiled data. Indeed, we find that Wiedeman strikes an ideal balance between promoting the federal interests and insuring that injured plaintiffs have access to highly apposite information. "Certainly Title 23, laudable insofar as it seeks to prospectively reduce harm to railroad crossing motorists, was never intended to deny legitimate accident victims the only system of redress available to them." Miguez at 1188.
Furthermore, we have been unable to clearly discern the rationale underlying Congress' decision to add the term "collect" to Section 409. Such uncertainty buttresses our conclusion that the term "collected" does not preclude Palacios from discovering the DOTD's raw data.

CONCLUSION
For the foregoing reasons, we affirm the trial court's judgment insofar as it compels the DOTD to respond to each of the foregoing interrogatories and production requests propounded by Palacios. Both Wiedeman and Miguez remain unaffected by Congress' amendment; thus, plaintiffs remain entitled to discover reports and raw data gathered for or incorporated into the DOTD's Title 23 compilations. The DOTD is cast for all costs in the amount of $3,633.20.
AFFIRMED.
COOKS, J., concurs in the result only.
AMY, J., concurs and assigns separate reasons.
AMY, Judge, concurring.
The reasoning advanced by my colleagues in the majority is not persuasive to me. The statute is clear, its meaning plain. 23 U.S.C. § 409 now states that "reports, surveys, schedules, lists, or other data compiled or collected for the purpose of identifying, evaluating, or planning the safety enhancement of potential accident sites, hazardous roadway conditions, or railway-highway crossings.... for the purpose of developing any highway safety construction improvement project which may be implemented utilizing Federal-aid highway funds shall not be subject to discovery...." In my opinion, raw data that has been collected by DOTD, in compliance with Title 23, is privileged under Section 409.
Nevertheless, I concur in the result reached by the majority because plaintiffs filed a motion to compel and the trial court ordered DOTD to show cause why plaintiffs should be precluded from discovering information sought in the production requests and interrogatories. DOTD alleged that this information was exempt from discovery pursuant to Section 409. DOTD had the burden of showing that the materials it had in its possession were compiled or collected in such a manner that it was within the purview of Section 409. The record is devoid of any such showing. Therefore, DOTD failed to prove that the materials requested in discovery were privileged under Section 409 and exempt from discovery by plaintiffs. In fact, DOTD admitted in brief that "there is no evidence in the record below to show that DOTD collected the contested data pursuant to the HSIP [Highway Safety Improvement Project]." Accordingly, there is no evidentiary basis in this record on which we may conclude that the privilege of Section 409 is *811 applicable; nor may we reverse the trial court's ruling.
Finally, because of my conclusion that plaintiffs are entitled to the materials requested, I do not reach the merits of plaintiffs' contentions regarding the constitutionality of 23 U.S.C. § 409; viz., that 23 U.S.C. § 409 violates the Fifth and Fourteenth Amendments of the United States Constitution. Whether Section 409 violates these constitutional provisions or, whether, although not specifically argued by the parties here, it may violate the Tenth Amendment, will await future consideration.
Accordingly, I respectfully concur.