MACKIE v GRAND TRUNK WESTERN RAILROAD COMPANY

Docket Nos. 147321, 148509. Submitted August 2, 1995, at Grand
    Rapids. Decided January 12, 1996, at 9:10 A.M. Leave to appeal
    sought.
    James B. Mackie brought an action in the Eaton Circuit Court
        against Grand Trunk Western Railroad Co., seeking damages
        for injuries sustained when he fell while riding his bicycle near
        one of the defendant's highway crossings. The court, G. Michael
        Hocking, J., denied a request by Blue Cross and Blue Shield of
        Michigan to intervene in the action. The jury returned a
        verdict finding that the defendant was negligent and that its
        negligence was a proximate cause of the plaintiff's injuries. The
        court then entered a judgment for the plaintiff and denied the
        defendant's motion for judgment notwithstanding the verdict.
        The defendant appealed (Docket No. 148509) and Blue Cross
        appealed by leave granted from the denial of its motion to
        intervene (Docket No. 147321). The appeals were consolidated.
        The Court of Appeals held:
        1. The trial court committed error requiring reversal in
        allowing into evidence a "Grade Crossing On-Site Review"
        report prepared by the Michigan Department of Transporta-
        tion. The report was inadmissible pursuant to 23 USC 409.
        State materials do not fall outside the scope of § 409 merely
        because they are not compiled solely for federal reporting
        purposes and are available for other uses. A document that
        otherwise falls within the ambit of § 409 must be considered
        inadmissible even though it fulfills a state function as well as a
        federal function.
        2. Blue Cross made a sufficient showing pursuant to MCR
        2.209(A) and must be allowed to intervene on remand.
        3. There was insufficient evidence of causation with respect to
        the plaintiff's "floating rail" theory of liability. However, the
        jury reasonably could have found for the plaintiff on the basis
        of the alternative theory that an excessive gap between the rail
        and the timber caused the accident. Because there was no

REFERENCES

Am Jur 2d, Railroads § 624.
See ALR Index under Railroads.

special verdict form, it is impossible to determine which theory formed the basis of the jury's verdict and whether there was sufficient evidence to support the verdict. Therefore, the trial court did not err in denying the defendant's motion for judgment notwithstanding the verdict.

4. Although admission of test results performed on bicycles different from the one involved in the accident was improper, the error does not require reversal.

5. The trial court properly applied §§ 6306 and 6311 of the tort reform act, MCL 600.6306, 600.6311; MSA 27A.6306, 27A.6311. Those sections, read together, evince a legislative intent that future damages and costs awarded to plaintiffs who are sixty years of age or older at the time of the judgment should not be reduced to gross present cash value. Section 6311's exemption of those plaintiffs from certain subsections of § 6306 does not mean that they lose their rights to future damages and costs. Future damages and costs are available under common-law tort compensation precedents, apart from § 6306. Therefore, there was no equal protection violation.

6. The collateral source rule, MCL 600.6303; MSA 27A.6303, applies to reduce the plaintiff's recovery to the extent that his future expenses for medical care are payable by a collateral source.

Reversed and remanded.

EVIDENCE — ADMISSIBILITY — RAILROADS — SAFETY ENHANCEMENT REPORTS — SAFETY CONSTRUCTION IMPROVEMENTS — UNITED STATES CODE.

Section 409 of title 23 of the United States Code provides that reports, surveys, schedules, lists, or other data compiled for the purpose of identifying, evaluating, or planning the safety enhancement of railway-highway crossings pursuant to 23 USC 130, 144, or 152 or for the purpose of developing any highway safety construction improvement project that may be implemented utilizing federal-aid highway funds may not be admitted into evidence in federal or state courts in any action for damages arising from any occurrence at a location mentioned or addressed in such reports, surveys, schedules, lists, or data; state materials do not fall outside the scope of § 409 merely because they are not compiled solely for federal reporting purposes and are available for other uses; a document that otherwise falls within the ambit of § 409 is inadmissible even though it fulfills a state as well as a federal function.

*Abood, Abood & Rheaume, P.C.* (by *William E.*

*Rheaume, Joseph D. Reid,* and *Andrew P. Abood),*
and *Reid & Reid* (by *John Fifarek* and *Colleen
Reid),* for James B. Mackie.

*Fraser Trebilcock Davis & Foster, P.C.* (by *Everett R. Trebilcock, Kathleen E. Kane,* and *Michael
E. Cavanaugh),* for Grand Trunk Western Railroad
Co.

*Michael F. Skinner* and *Colleen C. Cohan,* for
Blue Cross and Blue Shield of Michigan.

Before: BANDSTRA, P.J., and MARKEY and J. T.
HAMMOND,* JJ.

PER CURIAM. Defendant appeals following a jury
verdict for plaintiff. Blue Cross and Blue Shield of
Michigan (BCBS) appeals by leave granted from the
denial of its motion to intervene. The appeals were
consolidated. We reverse and remand for a new
trial. We further order that BCBS be allowed to
intervene for purposes of further proceedings below.

On September 11, 1987, plaintiff was seriously
injured when he fell while riding his bicycle near
defendant's railroad tracks on Millett Highway in
Eaton County. Plaintiff subsequently sued defendant, arguing that defendant's defective railroad
crossing caused him to fall. Defendant argued that
plaintiff's fall was caused by the front wheel coming off plaintiff's bicycle. Following trial, a jury
found that defendant was negligent and that its
negligence was a proximate cause of plaintiff's
injuries.

Defendant argues that the trial court committed
error requiring reversal in allowing into evidence,
over objection, the "Grade Crossing On-Site Re-

---

* Circuit judge, sitting on the Court of Appeals by assignment.

view" report (Grade Crossing Report) prepared by the Michigan Department of Transportation. The Grade Crossing Report was central to one of the theories under which plaintiff argued that defendant was liable for his injuries, i.e., that there was a loose or "floating" rail at the railway crossing where the accident occurred. Our review of the trial transcript[1] and comments by plaintiff's counsel during oral argument reveal that this document was crucial to plaintiff's case because it was used to show that defendant had notice of the floating rail problem and that it had a responsibility to correct the problem before the accident.

We agree with defendant that the Grade Crossing Report was inadmissible under 23 USC 409, which, at the time of trial, provided:

> Notwithstanding any other provision of law, reports, surveys, schedules, lists, or data compiled for the purpose of identifying[,] evaluating, or planning the safety enhancement of potential accident sites, hazardous roadway conditions, or railway-highway crossings, pursuant to sections 130, 144, and 152 of this title or for the purpose of developing any highway safety construction improvement project which may be implemented utilizing Federal-aid highway funds shall not be admitted into evidence in Federal or State court or considered for other purposes in any action for damages arising from any occurrence at a location mentioned or addressed in such reports, surveys, schedules, lists, or data.

Defendant raised this argument in a motion in

---

[1] Plaintiff's strong reliance upon this document was demonstrated in counsel's repeated remarks at trial during opening, closing, and rebuttal arguments that defendant had "notice" of the condition of the tracks because of the document, had a "responsibility" to repair the tracks, and was accountable to plaintiff for failing to repair the tracks.

limine well before trial, in an objection at trial, and in a posttrial motion for a new trial.

Although the basis of the ruling that § 409 did not apply is not completely clear, our review of the transcript of the hearing regarding the motion in limine suggests that the trial court interpreted § 409 too narrowly in at least two regards. First, the trial court noted a reference to a Michigan statute, MCL 469.1; MSA 22.761, on the Grade Crossing Report and reasoned that the document had a state purpose, i.e., to alert responsible parties regarding needed repairs under that statute. While that may well have been one purpose of the Grade Crossing Report, "state materials do not fall outside the scope of § 409 merely because they are not compiled solely for federal reporting purposes and are available for other uses." *Lusby v Union Pacific R Co,* 4 F3d 639, 641 (CA 8, 1993). Section 409 has at least two purposes: (1) to facilitate candor in the preparation of documents by protecting them from use in litigation, *Taylor v St Louis S R Co,* 746 F Supp 50, 54 (D Kan, 1990), and (2) to prevent the record keeping required by federal law from providing "an additional, virtually no-work, tool for direct use in private litigation," *Hagerty v Southern R Co,* 133 FRD 34, 35 (ED Mo, 1990). To promote these goals, a document that otherwise falls within the ambit of § 409 must be considered inadmissible even though it fulfills a state as well as a federal function.

The trial court also apparently reasoned that § 409 applies only to documents that are compiled by the state for the purpose of receiving funds for highway safety construction improvement projects. The court expressed doubts that the federal code allowed the State of Michigan to approach the federal government for funding to put some spikes into the Millett Highway spur because that would

not be the kind of "comprehensive" project envisioned by the federal statutes.

This analysis was incorrect for two reasons. First, the court apparently reasoned that § 409 was inapplicable because the Grade Crossing Report did not relate to any federal funding request for improvements at the Millett Highway crossing. However, that analysis is refuted by the clear language of the statute, making it applicable to documents generated with respect to projects "which *may* be implemented utilizing Federal-aid highway funds . . ." (emphasis added). Although Millett Highway is not part of any federal-aid system, the Millett Highway crossing may nonetheless qualify for federal aid for the purpose of safety enhancement. *Harrison v Burlington N R Co,* 965 F2d 155, 159 (CA 7, 1992). Further, we are aware of no definition of § 409's "safety construction improvement project" under which only "comprehensive" projects qualify, or of any evidence that the recurring floating rail problem might not have been best solved with a project much more "comprehensive" than simply resecuring spikes.

Further, the trial court failed to recognize that documents protected by § 409 fall into two categories. See *Wiedeman v Dixie Electric Membership Corp,* 627 So 2d 170, 172-173 (La, 1993). The statutory language covers various materials compiled "for the purpose of identifying[,] evaluating, or planning the safety enhancement of . . . railway-highway crossings, pursuant to section[ ] 130 [29 USC 130] . . . *or* for the purpose of developing any highway safety construction improvement project which may be implemented utilizing Federal-aid highway funds . . ." (emphasis added). The court concentrated on the second of these purposes in ruling that the Grade Crossing Report was not protected by this statutory section. However, de-

fendant has presented a compelling argument that the Grade Crossing Report was within the first purpose of § 409 because it was a report compiled for the purpose of identifying, evaluating, or planning the safety enhancement of railway-highway crossings pursuant to § 130. Section 130 requires that states "conduct and systematically maintain a survey of all highways to identify those railroad crossings which may require" various safety improvements. 23 USC 130(d). That survey is used in making federal funding decisions for railroad-crossing projects. 23 USC 130(a), (b), and (c). Affidavit testimony by Michigan Department of Transportation employees Donald Riel and Larry Tibbits explained how the State of Michigan maintains a National Grade Crossing Inventory compiled with data gathered using Grade Crossing Reports, such as is at issue here, for these § 130 purposes.[2]

The Grade Crossing Report clearly falls within the realm of documents protected by § 409. See *Claspill v Missouri P R Co,* 793 SW2d 139, 139-140 (Mo, 1990) (finding § 409 applicable to similar documents—a list of dangerous railroad crossings and a field inspection form proposing safety improvements at the subject crossing). The mandatory language of § 409 made the Grade Crossing Report inadmissible notwithstanding the usual discretion given to the trial court in evidentiary matters. *Harrison, supra* at 159-160. Admission of this document, which was used in a compelling way against defendant,[3] constituted error requiring reversal.

---

[2] Defendant made its most convincing case regarding the applicability of § 409 only after trial, upon a motion for a new trial. However, we do not find fault with this because, as noted above, when the issue was first raised, the trial court improperly analyzed § 409 in a manner that effectively prohibited defendant from arguing its applicability under the facts of this case.

[3] We cannot consider introduction of this document harmless given the vociferous arguments upon appeal that it was used to show how

See *Lusby, supra* at 643 (wrongful death action verdict against railway reversed following improper admission of evidence contrary to § 409).

We now turn to the intervention claim raised by BCBS. Because we are ordering a new trial, it is unnecessary to consider whether the BCBS motion for intervention brought during the first trial was "timely" under MCR 2.209(A). Our review of the record and arguments raised by BCBS upon this appeal convinces us that BCBS claims an interest relating to this action and is so situated that it may as a practical matter be impaired or impeded in protecting that interest if it is not allowed to intervene. MCR 2.209(A)(3). Any timeliness problem that may have existed before no longer exists with respect to further proceedings below. We conclude that BCBS should be allowed to intervene upon remand.

The above rulings effectively dispose of this appeal. However, for the benefit of the parties and the trial court following remand, we will comment briefly on a few other issues that have been raised. We find convincing defendant's argument that there was insufficient evidence of causation with respect to the "floating rail" theory of liability under the standards enunciated by *Skinner v Square D Co,* 445 Mich 153, 173-174; 516 NW2d 475 (1994), and *Jordan v Whiting Corp,* 396 Mich 145, 151; 240 NW2d 468 (1976). This theory rested

defendant "misrepresented to the jury" its ownership of the railroad crossing, its receipt of notice of the maintenance defect, and its efforts to repair the loose rail. Plaintiff's counsel feels so strongly about this that he argues in his brief that "even if [§ 409] had any application, . . . no Court can countenance or participate in this type of activity," i.e., allowing defendant to continue its misrepresentations by keeping the Grade Crossing Report from the jury. Of course, the exact opposite is true; under the Supremacy Clause, US Const, art VI, § 2, "[s]ection 409 is one of the laws of the United States by which all judges of this state and the courts they serve are bound . . . ." *Sawyer v Illinois C G R Co,* 606 So 2d 1069, 1073 (Miss, 1992).

squarely upon a fact not in evidence, i.e., that another vehicle moved the rail just as plaintiff was crossing it.

Nonetheless, considering the evidence presented, the jury reasonably could have found for plaintiff on the basis of the alternative theory that the excessive gap between the rail and timber caused the accident, and that finding would not necessitate a finding of comparative negligence, contrary to defendant's argument. In the absence of a special verdict form, it is impossible to determine that the jury decided the case on the floating rail theory rather than the excessive gap theory. Consequently, it is impossible to determine whether there was sufficient evidence to support the verdict. We find no error, therefore, in the trial court's decision against granting defendant's motion for judgment notwithstanding the verdict. Moreover, defendant could better have raised its argument that the evidence was insufficient to show causation under the floating rail theory in a motion for a directed verdict and, if successful, by requesting a limiting instruction.[4] MCR 2.515, 2.516.

With respect to defendant's arguments that test results performed on bicycles different from that involved in the accident were improperly admitted, we agree, but do not find that admission of this evidence alone would constitute error requiring reversal. In any event, plaintiff should be able to conduct the tests again before retrial using a more similar bicycle.

---

[4] In requesting a limiting instruction, defendant could have asked for a determination by the trial court that proof of the floating rail theory was deficient as a matter of law and, accordingly, for an instruction to the jury preventing it from finding defendant liable under this theory, but allowing the jury to consider whether defendant was liable under the alternative theory of an excessive gap between the rail and timber.

Defendant raises a number of questions regarding the tort reform act. We find that §§ 6306 and 6311, read together, evince a legislative intent that future damages and costs awarded to plaintiffs who are sixty-years years of age or older at the time of the judgment should not be reduced to gross present cash value. MCL 600.6306, 600.6311; MSA 27A.6306, 27A.6311. However, § 6311's exemption of these plaintiffs from certain subsections of § 6306 does not concomitantly mean that they lose their rights to future damages and costs. Future damages and costs are available under common-law tort compensation precedents, apart from § 6306. That section, which merely standardizes orders of judgment and requires certain reductions in certain cases, does not itself establish rights to future damages and costs. Thus, § 6311 does not, by exempting persons sixty years of age or older from parts of § 6306, operate to deny a plaintiff's rights to future costs and damages. With this understanding of these sections of the tort reform act, we do not find any equal protection violation as argued by defendant and conclude that the trial court properly applied these sections. We agree with defendant that the collateral source rule, MCL 600.6303; MSA 27A.6303, should apply to reduce plaintiff's recovery to the extent that his future expenses for medical care are payable by a collateral source.

We reverse and remand for a new trial and direct that the trial court enter an order allowing BCBS to intervene. We do not retain jurisdiction