740 So.2d 95 (1999)
Maria E. PALACIOS, individually and on Behalf of her minor children, Jenny Garcia, Jose Garcia, Cynthia Palacios and Jenny Palacios
v.
LOUISIANA AND DELTA RAILROAD INC., et al.
No. 98-CC-2932.
Supreme Court of Louisiana.
July 2, 1999.
Richard P. Ieyoub, Atty. Gen., Stacey Allen Moak, Baton Rouge, Counsel for Applicant.
John Felton Blackwell, Gibbons, Blackwell & Stevens; Michael P. Corry, Briney & Foret, Lafayette; Kyle Liney Mark Gideon, Davidson, Meaux, Sonnier, McElligott & Swift, Lafayette; Leon Joseph Minvielle, Haik & Minvielle, New Iberia; Leonard Louis Levenson, Zara Lyn Zeringue, Belle Chasse, Counsel for Respondent.
CALOGERO, Chief Justice.[*]
This case arises out of a collision between a car driven by the plaintiff, Maria *96 Palacios, and a Louisiana & Delta Railroad, Inc. freight train at the railroad crossing on Monnet Road in the city of Jeanerette, Louisiana. We granted writs in this case to determine whether the State of Louisiana, one of the defendants in the lawsuit filed by Palacios, has established that certain information sought by plaintiff during discovery is privileged under 23 U.S.C. § 409.

Facts and Procedural History
On May 2, 1994, while driving north on Monnet Road, Maria Palacios' 1987 Grand Am was struck by a westbound Louisiana & Delta Railroad train. The vehicle was struck on the passenger's side and overturned into a ditch on the north side of the railroad tracks. Alleging serious injuries to her head, neck and chest, Palacios filed suit against the railroad and the State of Louisiana, through the Department of Transportation and Development (DOTD), among others, asserting negligence and strict liability claims. In response, the state filed a motion for summary judgment, arguing that the intersection at issue is not part of the state highway system, and that the state has not assumed contractual responsibility for the intersection, so that the state is not responsible for its safety and maintenance. In order to support an opposition to this motion, Palacios propounded numerous discovery requests upon DOTD. Many of the interrogatories and requests for admission/production questioned DOTD about its records and files concerning the Monnet Road crossing, as well as studies, inspections, accident histories or complaints involving the intersection.[1]
DOTD objected to many of the discovery requests, on the grounds that the information sought was protected by 23 U.S.C. § 409, a federal statute which provides that:

*97 Notwithstanding any other provision of law, reports, surveys, schedules, lists or data compiled or collected for the purpose of identifying, evaluating, or planning the safety enhancement of potential accident sites, hazardous roadway conditions, or railway-highway crossings, pursuant to sections 130, 144 and 152 of the title or for the purpose of developing any highway safety construction improvement project which may be implemented using Federal-aid highway funds shall not be subject to discovery or admitted into evidence in a Federal or State court proceeding or considered for other purposes in any action for damages arising from any occurrence at a location mentioned or addressed in such reports, surveys, schedules, lists or data. (As amended Nov. 28, 1995, P.L. 104-59, Title III, § 323, 109 Stat. 591).
Palacios filed a motion to compel the DOTD to comply with the discovery requests. The DOTD argued that the 1995 amendment to the statute, which added the language "or collected," expanded the meaning of the statute to include protection of raw data, accident reports, and traffic counts accumulated by the state pursuant to sections 130, 144 and 152 of title 23 or for the purpose of developing any highway safety construction improvement project which may be implemented using federal funds.[2] After a hearing, held December 15, 1996, the trial court ruled that the privilege was not applicable and ordered the DOTD to supplement its answers to plaintiffs' interrogatories and production requests, citing this Court's preamendment decision in Wiedeman v. Dixie Elec. Membership Corp., 93-1314 (La.11/29/93), 627 So.2d 170,[3] and Miguez v. Southern Pacific Transp. Co., 94-323 (La.App. 3 Cir. 10/5/94), 645 So.2d 1184. The court of appeal affirmed. Palacios v. Louisiana & Delta Railroad, Inc., 96-292 (La.App. 3 Cir. 10/17/96), 682 So.2d 806.
We granted writs and vacated the judgment of the court of appeal, remanding the case to the trial court for a determination of which, if any, of the requested documents fell within the protection of the amended version of 23 U.S.C. § 409. Palacios, 96-2756 (La.1/10/97), 685 So.2d 132. Subsequently, we specifically addressed the effect of the 1995 amendment in an unrelated case, Reichert v. State Dep't of Transp. & Dev., 96-1419 (La.5/20/97), 694 So.2d 193,[4] ruling that the 1995 amendment adding data "collected" to the category of protected information was Congress' response to recent state court decisions like Wiedeman that had purportedly misinterpreted the statute. The Reichert court applied the amended statute and reached a result different from that of Wiedeman. While in the Wiedeman decision this Court had determined that raw data like accident reports and traffic counts did not fall within the scope of section 409, the Reichert court held that the amendment to section 409 bars discovery and admission of all highway safety information collected or compiled by the state for the purpose of obtaining federal funds to enforce safety.
After remand, an evidentiary hearing was held in the trial court on September 25, 1997. DOTD presented two state officials, who testified that the state's information on the Monnet intersection, as well as every railroad crossing in the state, is collected in order to comply with federal law concerning federal highway and railroad safety. Citing our decision in *98 Reichert, the trial court ruled that DOTD had correctly asserted the Section 409 privilege, and that the information sought by plaintiff was protected by the statute.
The court of appeal reversed. Palacios, 98-258 (La.App. 3 Cir. 10/28/98), 721 So.2d 557. While acknowledging the 1995 amendment to section 409 and our decision in Reichert, the court of appeal concluded that the statute's privilege may be invoked only when the data at issue is "compiled or collected for the purpose of developing highway safety construction or improvement projects which are either implemented with federal funds or initiated by 23 U.S.C. § 130, 144 or 152." Id. at 6, 721 So.2d at 560. In this case, the court found there to be insufficient evidence to trigger section 409's immunity privilege, concluding that the "lone assertions of DOTD's witnesses" were insufficient to warrant the statute's immunity privilege. However, because the court found this issue to be part of an "emerging area in the jurisprudence," the case was remanded to the trial court to allow DOTD the opportunity to present "empirical evidence" in support of its assertion that the information sought by plaintiff is protected by section 409.
We granted the writ application of DOTD to address DOTD's contention that the court of appeal misapplied the manifest error standard of review and that the uncontested testimony of the state officials it presented, which was consistent and credible, was adequate to establish that the information sought by plaintiff is protected by 23 U.S.C. § 409.

Discussion
Though little or no legislative history regarding 23 U.S.C. § 409 can be found,[5] courts throughout the nation have surmised that section 409 was enacted to encourage active evaluation of highway and railway safety hazards. We have previously held that, by enacting section 409, Congress intended to "[f]oster the free flow of safety-related information by precluding the possibility that such information later would be admissible in civil suits. The interest to be served by such legislation is to obtain information with regard to the safety of roadways free from the fear of future tort actions." Reichert, p. 4, 694 So.2d at 197, quoting Perkins v. Ohio Dept. of Transp., 65 Ohio App.3d 487, 584 N.E.2d 794 (1989). See also, Fry v. Southern Pacific Transp. Co., 30,540 (La.App. 2 Cir. 6/24/98), 715 So.2d 632. The statute serves to "facilitate candor in administrative evaluations of highway safety hazards." Stephens v. Town of Jonesboro, 25,715, p. 6-7 (La.App. 2 Cir. 8/19/94), 642 So.2d 274, 279, quoting Robertson v. Union Pacific Railroad Co., 954 F.2d 1433, 1435 (8th Cir.1992) and Duncan v. Union Pacific Railroad Co., 790 P.2d 595, 597 (Utah Ct.App.1990), aff'd 842 P.2d 832 (Utah 1992). Additionally, the statute has been considered to prohibit the use of federally required record-keeping from being used as a tool in private litigation. Stephens, supra citing Robertson, supra. See also, Harrison v. Burlington Northern Railroad Co., 965 F.2d 155, 156 n. 3 (7th Cir.1992); Light v. State, 149 Misc.2d 75, 560 N.Y.S.2d 962, 965 (N.Y.Ct.Cl.1990); and Taylor v. St. Louis Southwestern Railway Co., 746 F.Supp. 50, 54 (D. Kan. 1990).[6]
*99 Section 409 forms part of a comprehensive federal plan to promote highway safety. Wiedeman, 627 So.2d at 173; 23 U.S.C. § 402. As described infra, Section 409, in its current form,[7] precludes the discovery and admission into evidence of information "compiled or collected for the purpose of identifying, evaluating, or planning the safety enhancement of potential accident sites, hazardous roadway conditions, or railway-highway crossings, pursuant to sections 130, 144 and 152 of the title" or "for the purpose of developing any highway safety construction improvement project which may be implemented" using federal highway funds.
Because the matter before us involves an accident at a railroad crossing, and because the DOTD has argued that all information it possesses regarding the Monnet Road crossing was compiled pursuant to federal railroad crossing improvement law, our discussion will center around that portion of section 409 dealing with 23 U.S.C. § 130, the Railway-Highway Crossing Program. 23 U.S.C. § 130 was enacted as part of the Highway Safety Act of 1973, making federal funding available to the states for use in improving railroad crossings. Rick v. State Dep't of Transp. & Development, 93-1776 (La.1/14/94), 630 So.2d 1271, 1273-4, citing CSX Transportation, Inc. v. Easterwood, 507 U.S. 658, 113 S.Ct. 1732, 123 L.Ed.2d 387 (1993). However, as a prerequisite to receiving these funds, a state must "conduct and systematically maintain a survey of all highways to identify those railroad crossings which may require separation, relocation, or protective devices, and establish and implement a schedule of projects for this purpose." 23 U.S.C. § 130(d). When Louisiana's participation in the program began, the DOTD surveyed only "on-system" crossings, i.e. crossings that intersected state highways. Rick, supra. The federal government began funding "off-system" crossing improvements in 1976. Id. It was not until 1983, in response to the enactment of the Federal Surface Transportation Assistance Act of 1982, that the Louisiana DOTD began to include off-system crossings, those not part of the state highway system, in its evaluation programs. Id.
Thus, as pertains to this case, the protection of section 409 will apply to:
(1) reports, surveys, schedules, lists or data,
(2) compiled or collected,
(3) for the purpose of identifying, evaluating, or planning the safety enhancement of ... railway-highway crossings,
(4) pursuant to 23 U.S.C. § 130.[8]
*100 The question before us is whether the defendant DOTD in this case has presented evidence sufficient to satisfy the four criteria above, thus triggering the application of 23 U.S.C. § 409. The court of appeal reasoned that DOTD cannot assert a section 409 privilege because "DOTD did not expressly state its intention to conduct surveys pursuant to 23 U.S.C. § 130 nor to appropriate any federal funds for highway safety construction or improvement of the subject roadway, as mandated by 23 U.S.C. § 409." Palacios, 98-258, p. 4, 721 So.2d at 559. The court of appeal concluded that the testimony of DOTD officials alone was insufficient to establish that the information sought by the plaintiff was acquired pursuant to section 130, so as to trigger section 409 protection.
It appears undisputed in the record that Monnet Road is a city of Jeanerette road and is not part of the state highway systemit can be characterized as an "off-system" road. At the evidentiary hearing on plaintiff's motion to compel, the DOTD presented the testimony of Thomas Barkowitz, the planning coordinator for the Louisiana Highway Safety Commission, and William Shrewsberry, the DOTD rail-highway safety engineer. Barkowitz testified that his office, which is almost entirely federally funded, is the repository for accident data received from agencies throughout the state. The data is collected in order to prepare an annual highway safety plan, which is submitted to the National Highway Traffic Safety Administration and the Federal Highway Administration in order to secure federal funding for the state's highway improvement programs.
Though not familiar with specific federal statute numbers, Shrewsberry testified that the DOTD, in accordance with federal law, maintains a four-part inventory data base of public, private and pedestrian railroad crossings. According to Shrewsberry, each and every railroad crossing in the state is assigned an inventory number by the federal Department of Transportation and Development. He stated that the state attempts to have every crossing inventoried, whether the crossing is on-or off-system. The four-part inventory, which is maintained jointly by the railroads and DOTD, contains a variety of information, including the classification of the railroad crossing, estimated train and vehicular traffic, the physical condition of the crossing, the type of warning signals used and other data. Shrewsberry stated that the information in the data base is used to evaluate the state's railroad crossings in order to determine how to best use the limited Federal Railroad Safety funds made available by Congress through the Federal Highway Administration. Most importantly, Shrewsberry asserted that, because the Monnet Street crossing is not part of the state highway system, any file the state DOTD has on the crossing only exists because of this federal railroad safety program.[9]
Plaintiff, in the discovery requests at issue, has asked for a description of the contents of the DOTD's file on the Monnet Road crossing, as well as production of any federal inventories, accident histories, or plans for improvements to the crossing. Such information would certainly qualify as "reports, surveys, schedules, lists or data" that has been "compiled or collected," so as to satisfy the first two prongs of our four-part inquiry.
We now turn to the remaining question of whether this information was gathered in order to identify, evaluate, or plan the safety enhancement of railroad crossings pursuant to section 130. As previously stated, the assembling of such information is federally mandated in order for the state to qualify for federal railroad safety funds. 23 U.S.C. § 130(d). Moreover, the uncontradicted testimony of William Shrewsberry establishes that, but for this *101 federal railroad safety assessment program, the DOTD would possess no information on, and have no involvement with, the Monnet Road crossing. The trial court obviously found this testimony to be credible. The plaintiff has argued that the DOTD's assertions in its motion for summary judgmentnamely, that the state is in no way involved with the Monnet Road railroad crossingshould preclude its current argument that the information in its possession is protected by section 409 because it was gathered by the state as part of a federally mandated survey of all crossings in the state. We disagree. It is evident that the state, while claiming no responsibility for the maintenance and safety of the Monnet Road crossing to date, is still required to include this crossing in its ongoing general surveys of all grade crossings in the state. Thus, we do not find the positions taken by the state in its motion for summary judgment and in its opposition to plaintiff's motion to compel discovery, to be contradictory. The state's contention that it has played no role in the operation of the Monnet Road crossing has no bearing on our consideration of whether the data it possesses regarding the crossing falls within the scope of section 409.
The testimony by the DOTD officials, combined with an examination of the federal mandate contained in section 130(d), effectively establishes the fact that the information sought by the plaintiff was assembled "for the purpose of identifying, evaluating, or planning the safety enhancement of ... railway-highway crossings, pursuant to section 130," as described in 23 U.S.C. § 409. In fact, it is not unusual for the testimony of a state official to be used to support a conclusion that information in a state's possession is privileged under section 409. See, e.g., Beecher v. Keel, 94-0314 (La.App. 4 Cir. 9/29/94), 645 So.2d 666, writ denied, 95-0108 (La.3/10/95), 650 So.2d 1185 (relying upon testimony of the DOTD Deputy Secretary for the conclusion that a computerized report was prepared, at least in part, pursuant to federal requirements for highway funding); Mackie v. Grand Trunk Western Railroad Co., 215 Mich.App. 20, 544 N.W.2d 709 (1996) (using affidavit testimony of two Michigan Department of Transportation employees to establish that report on railroad crossing was compiled pursuant to 23 U.S.C. § 130); Seaton v. Johnson, 898 S.W.2d 232 (Tenn.Ct.App. 1995) (referring to uncontradicted affidavit of the defendant state's witness when concluding that information requested by the plaintiff was "collected and preserved for the sole and express purpose of complying with the federal statute of which 23 U.S.C. Section 409 is a part.").
There is no requirement, as the court of appeal apparently believed, that the state prove that the information compiled is linked to a particular federally funded safety project in order to qualify for the privilege established by the portion of section 409 that is at issue in this case. To the contrary, the information gathered by the state as part of its general examinations of all railroad crossings in the state, in order for the appropriate state and federal administrators to determine which crossings may need improvement and to qualify for federal funding for these improvements, falls within the protective scope of section 409. Thus, we see no error in the trial court's ruling that the data at issue is privileged.
We find that the DOTD has sufficiently established that the information sought by the plaintiff was assembled as part of a federal railway safety program, intended to aid the state and federal governments in identifying, evaluating and planning its railroad crossing safety enhancement needs, as mandated by 23 U.S.C. § 130(d), so as to trigger the application of 23 U.S.C. § 409.[10] Thus, the information *102 sought by the plaintiff on the Monnet Road crossing, whether from the DOTD's file on that intersection, or the Louisiana Highway Safety Commission's federally-funded accident information database, is privileged. Such a result is consistent with the purpose of section 409, which is to encourage states to actively and thoroughly investigate the railroad crossings within their borders, free from the fear that data compiled to serve this purpose might be later used to establish tort liability.
Of course, this is not to say that all documents and information in the state's possession will always be privileged under section 409. We conclude only that records amassed pursuant to the federal safety evaluation programs described in 23 U.S.C. Sections 130, 144 or 152, or for the purpose of developing other highway safety improvement projects which may be federally funded, are protected. The plaintiff is at liberty to investigate, examine and present other relevant evidence, so long as such evidence was not compiled or collected for purposes of federal highway improvement programs. Moreover, our ruling does not preclude the testimony of experts, eyewitnesses, or others, so long as that testimony is not based upon privileged documents or information. As this Court previously noted in Reichert, the plaintiff has not been deprived of her cause of actionshe "merely cannot rely upon the DOTD for [her] discovery." Reichert, p. 7, 694 So.2d at 199.

Plaintiff's Constitutional Arguments
In her briefs to the trial court and court of appeal, plaintiff presented alternative arguments that the privilege created by 23 U.S.C. § 409, if applicable to her case, constitutes a violation of the federal and state Constitutions. The trial judge, upon remand by this Court and after conducting the evidentiary hearing, ruled in favor of the DOTD, yet declined to address plaintiffs' constitutional arguments in his reasons for judgment. Because the court of appeal concluded that the trial judge erred in applying the section 409 privilege to plaintiff's case, it was not necessary for that court to reach these constitutional arguments.
The plaintiff is entitled to a consideration of these pretermitted constitutional claims. We therefore remand the case to the district court for consideration of these unaddressed constitutional arguments.

Decree
For the foregoing reasons, we find that the trial court was correct in denying plaintiff's motion to compel discovery and in finding the sought information privileged under 23 U.S.C. § 409. The judgment of the court of appeal is therefore reversed. The case is remanded to the district court for further consideration in keeping with the views expressed herein.
REVERSED and REMANDED TO THE DISTRICT COURT.
NOTES
[*] Victory, J., not on panel. Rule IV, Part 2, § 3.
[1] Currently, the remaining unresolved discovery requests are the following:

INTERROGATORY NO. 6:
Please state whether or not, in connection with your motion for summary judgment, if you inquired, investigated or otherwise researched the files of the "road maintenance engineer," and/or "agreements engineer," and/or William Shrewsbury, and/or Michael Morgan, and/or Virgil Minette in determining whether or not the DOTD had ever participated in any studies, programs, requests, complaints, suggestions, evaluations or any action whatsoever with respect to "safety enhancement" or signalization upgrading, or other implementation or requests for use or implementation of federal Highway Safety Funds from the FhwA [Federal Highway Administration] in connection with the Monnet Road Crossing.
INTERROGATORY NO. 11:
Please state in detail the documents, files, records or materials which you reviewed, or which were otherwise reviewed or investigated on behalf of the DOTD, as well as the persons to whom inquiries were made, or performed any investigations, to establish that the DOTD has never had any involvement with safety enhancement, safety enhancement proposals, safety enhancement studies, upgrade of signalizations, improvement of signalizations, receipts of complaints, requests for improvements, investigations, diagnostic studies, on site inspections, or the like for grade crossing upgrade or improvement or safety enhancement to the Monnet Road Crossing.
REQUEST FOR PRODUCTION NO. 4:
Please produce each and every FRA Inventory or similar document which you possess, or have knowledge which relates to the Monnet Road Crossing.
REQUEST FOR PRODUCTION NO. 5:
Please produce each and every accident history for the Monnet Road Crossing which you have, maintain, have knowledge, possess or otherwise control including but not limited to FRA accident reports or reporting forms, and/or State of Louisiana, Department of Public Safety and Corrections reports, and/or those maintained or possessed by DOTD traffic and planning department.
INTERROGATORY NO. 18:
With respect to the Monnet Road Crossing, please state whether or not the DOTD ever:
(A) Received any plans from the Southern Pacific Transportation Company and/or the Southern Pacific Railroad for safety enhancement, grade crossing improvement or active signalization;
REQUEST FOR PRODUCTION NO. 7:
Please produce each and every document which supports your response to the foregoing interrogatory including, but not limited to, each and every plan, project notice, request for final approval, work order, or similar documents.
[2] Prior to the 1995 amendment, this Court had interpreted the statute's protection as applicable only to compilations by the state, including surveys, studies and other "end products." Raw data gathered by the state, on the other hand, did not fall within the scope of section 409. Wiedeman v. Dixie Electric Membership Corp., 93-1314 (La.11/29/93), 627 So.2d 170.
[3] Opinion by Watson, J.; Kimball, J., concurring; Calogero, C.J., not on panel.
[4] Opinion by Traylor, J.; Lemmon, J. and Johnson, J., concurring; Calogero, C.J., not on panel.
[5] No record of discussion or comments regarding the specific legislative purpose of this statute is included in the House Conference Report summarizing the measure. H. Conf. Rep. No. 100-27, reprinted in 1987 U.S.Code Cong. & Admin. News 66, 156-57. There is a brief discussion of the motivating factors behind the 1995 amendment to the statute, during which Congress noted that "[i]t is intended that raw data compiled prior to being made part of any formal or bound report shall not be subject to discovery or admitted into evidence...." Act of November 18, 1995, Pub.L. No. 104-59, reprinted in 1995 U.S.Code Cong. & Admin. News 568.
[6] The United States government had an opportunity to explain the importance of section 409 in an amicus curiae brief submitted to the U.S. Supreme Court in conjunction with Ex parte Alabama Highway Dep't, 572 So.2d 389 (Ala.1990), cert. denied, 502 U.S. 937, 112 S.Ct. 370, 116 L.Ed.2d 322 (1991). At the invitation of the U.S. Supreme Court, the Solicitor General submitted a brief expressing the views of the federal government, stating:

If reports and data concerning potential highway safety hazards are subject to discovery in tort actions, State and private parties will likely be deterred from compiling complete and accurate information about such hazards. As a result, federal highway safety programswhich depend on information about safety problems supplied by the States and private entities such as railroadswill be jeopardized.
[7] We note that section 409 originally only prevented the admission in evidence of the data described in the statute. Section 409 was amended in 1991 to preclude the discovery of such information as well. Pub.L. 102-240, Title I, § 1035(a), Dec. 18, 1991, 105 Stat.1978. In 1995, the statute was amended once again, as discussed supra, in order to extend the statute's privilege to data "collected" as well as compiled. Pub.L. 104-59, Title III, § 323, Nov. 28, 1995, 109 Stat. 591. Though the accident at issue occurred in 1994, we will apply the current version of section 409, as amended in 1995, retroactively. Reichert, 694 So.2d at 199-200; Wiedeman, 627 So.2d at 173.
[8] The other sections of Title 23 mentioned in the protective statute, sections 144 and 152, concern the Highway Bridge Replacement and Rehabilitation Program and the Highway Hazard Elimination Program, respectively, and are not relevant to our discussion. Likewise, the latter portion of the statute, which protects data assembled "for the purpose of developing any highway safety construction improvement project which may be implemented using Federal-aid highway funds" is not relevant to our examination of this case and shall not be discussed.
[9] Shrewsberry noted that the contents of DOTD's file on the Monnet Road crossing are minimal, consisting only of a location map with a federal inventory number and a "brief little evaluation of the crossing."
[10] Normally, an in camera inspection of the contested documents by the trial judge could possibly be required, in order to determine which documents fall within the purview of section 409. However, because it appears that the Monnet Road crossing file possessed by DOTD in this case exists solely because of federally mandated railroad crossing studies, and no litigant contends otherwise, we conclude that no such inspection is necessary.