# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## CW 07-890


**BNSF RAILWAY COMPANY, ET AL**

**VERSUS**

**THE TOWN OF VINTON, ET AL**


********\*\*********

ON SUPERVISORY WRITS FROM THE
FOURTEENTH JUDICIAL DISTRICT COURT
PARISH OF CALCASIEU, NO. 2006-241
HONORABLE DAVID KENT SAVOIE, DISTRICT JUDGE

********\*\*********

## JOHN D. SAUNDERS
## JUDGE

********\*\*********

Court composed of John D. Saunders, Jimmie C. Peters, and Michael G. Sullivan, Judges.

## AFFIRMED IN PART; REVERSED IN PART.

**Charles Carmen Foti, Jr.**
**Attorney General**
**P. O. Box 94005**
**Baton Rouge, LA 70804**
**(225) 326-6000**
**Counsel for Defendant/Applicant:**
**State of Louisiana, DOTD**


**Stacey Allen Moak**
**Stacy Moak & Associates**
**P. O. Box 77651**
**Baton Rouge, LA 70879-7651**
**(225) 751-6300**
**Counsel for Defendant/Applicant:**
**State of Louisiana, DOTD**

**John Edmund McElligott, Jr.**
**Davidson, Meaux, Sonnier & McElligot**
**P. O. Drawer 2908**
**Lafayette, LA 70502-2908**
**(337) 237-1660**
**Counsel for Plaintiffs/Respondents:**
**Union Pacific Railroad Company**
**BNSF Railway Company**

**Christopher W. Stidham**
**Attorney at Law**
**P. O. Box 77651**
**Baton Rouge, LA 70879-7651**
**(225) 751-6300**
**Counsel for Defendant/Applicant:**
**State of Louisiana, DOTD**

**SAUNDERS, Judge.**

This case arises out of a collision between a pickup truck and a train, operated by the BNSF Railway Company (hereinafter "BNSF"), in the Town of Vinton, Louisiana, in Calcasieu Parish. We granted writs to determine whether the Department of Transportation and Development (hereinafter "the DOTD") has established that certain information sought by plaintiffs during discovery is privileged under 23 U.S.C. § 409.

**FACTS AND PROCEDURAL HISTORY:**

On July 22, 2005, a collision occurred between a train, operated by BNSF, and a pickup truck, operated by Ms. Patsy Ardoin (hereinafter "Ms. Ardoin"), at the Eddy Street railway-highway crossing in the Town of Vinton, Louisiana. As a result of the accident, Ms. Ardoin was killed and her daughter, Ms. Jasmine Cezar (hereinafter "Ms. Cezar"), suffered severe injuries.

As a result of the collision, two lawsuits were filed. BNSF and Union Pacific Railway Company (hereinafter "Union Pacific") filed suit in the 14th Judicial District Court on January 18, 2006, asserting claims of property damage and interruption of business. Named as defendants were the Town of Vinton, the Estate of Ms. Ardoin, and Ms. Cezar's father Mr. Derrick J. Cezar (hereinafter "Mr. Cezar") individually and on behalf of Ms. Cezar. On October 18, 2006, BNSF and Union Pacific amended their petition, adding as defendants Mr. Cezar, in his capacity as administrator of Ms. Ardoin's estate, and Ms. Ardoin's other children. Mr. Cezar filed a separate suit in Jefferson County, Texas, on February 2, 2006, naming BNSF, Union Pacific, and other defendants.

The DOTD, though not a party to this litigation, became involved as a result of discovery requests made by BNSF and Union Pacific in both the Louisiana and

Texas lawsuits. In the instant suit, BNSF and Union Pacific have noticed the deposition of DOTD employee Mr. William Shrewsberry (hereinafter "Mr. Shrewsberry"), the Highway/Railway Safety Engineer who was involved in the federal safety enhancement programs at the Horridge Street and Eddy Street crossings in the Town of Vinton. The notice of deposition also contains a subpoena *duces tecum* asking Mr. Shrewsberry to produce certain documents.

In conjunction with their discovery request, on November 16, 2006, BNSF, Union Pacific, and the DOTD filed a Joint Motion in Limine and Request for Protective Order, asking that the court issue a Protective Order prohibiting, *inter alia*, the introduction of documents in the DOTD's file which are protected from discovery pursuant to 23 U.S.C. § 409 and the introduction of any evidence or argument concerning the DOTD's activity at the Horridge Street or Eddy Street railway-highway crossings. The trial court denied the Motion in Limine and Request for Protective Order on January 25, 2007.

Mr. Shrewsberry's deposition was taken on March 19, 2007. During the deposition, counsel for the DOTD took the position that certain testimony and documents sought by BNSF and Union Pacific were protected under 23 U.S.C. § 409. As such, counsel advised Mr. Shrewsberry not to answer questions which would lead to the disclosure of information believed to be protected by 23 U.S.C. § 409 and refused to produce documents containing such information from the DOTD's file.

The deposition was then adjourned, so that BNSF and Union Pacific could seek a court order compelling the testimony and production of documents not afforded by Mr. Shrewsberry's deposition. BNSF and Union Pacific filed such a motion, which was heard by the trial court on April 26, 2007. At the hearing, the

2

court ordered that the DOTD produce its entire file to the court within ten days for an *in camera* inspection. Counsel for the DOTD timely produced its file on the Horridge Street and Eddy Street crossings to the Court, along with a Table of Contents/Privilege Log setting forth each document in the file and the nature of any objection to its discovery. Documents in the file which the DOTD determined were not protected by 23 U.S.C. § 409 or other privileges were forwarded to all counsel on May 10, 2007.

On May 30, 2007, after reviewing the file and considering the relevant statutory law and jurisprudence, the trial court issued an Amended Ruling on 23 U.S.C. § 409 Privilege, setting forth which DOTD documents were discoverable. Notice of the ruling was issued to all counsel on June 11, 2007. On June 27, 2007, the DOTD provided notice of its intent to seek supervisory writs from this court, and asked the trial court to set a return date. The trial court set a return date of July 11, 2007. Additionally, the DOTD filed a Motion and Order to Stay the Production of Documents and Deposition of Mr. Shrewsberry, which was granted on June 27, 2007. The DOTD now offers this writ application.

**ASSIGNMENT OF ERROR:**

1. Did the trial court commit legal error in ruling that certain documents in the possession of the DOTD were discoverable because the documents were compiled or collected for the purpose of identifying, evaluating or planning the safety enhancement of the railroad-highway grade crossings at Horridge and Eddy Streets in the Town of Vinton and are not discoverable or admissible as evidence pursuant to 23 U.S.C. § 409?

**DISCUSSION:**

3

The DOTD asserts that the trial court committed legal error by ruling, in violation of 23 U.S.C. § 409, that certain documents were discoverable. We agree in part and disagree in part.

The discovery and admission as evidence of certain reports and surveys related to railroad-highway grade crossings is governed by 23 U.S.C. § 409. That statute provides:

> Notwithstanding any other provision of law, reports, surveys, schedules, lists, or data compiled or collected for the purpose of identifying, evaluating, or planning the safety enhancement of potential accident sites, hazardous roadway conditions, or railway-highway crossings, pursuant to sections 130, 144, and 148 of this title or for the purpose of developing any highway safety construction improvement project which may be implemented utilizing Federal-aid highway funds shall not be subject to discovery or admitted into evidence in a Federal or State court proceeding or considered for other purposes in any action for damages arising from any occurrence at a location mentioned or addressed in such reports, surveys, schedules, lists, or data.

Of the sections mentioned in the text of 23 U.S.C. § 409, only 23 U.S.C. § 130—entitled "Railway-Highway Crossings"—is relevant to the case at bar.[1]

Faced with a scenario similar to that found in the instant case, the supreme court in *Palacios v. La. and Delta Railroad, Inc.*, 98-2932, p. 8 (La. 7/2/99), 740 So.2d 95, 99, distilled the relevant analysis of 23 U.S.C. § 409 as follows:

> [A]s pertains to this case, the protection of section 409 will apply to:
> (1) reports, surveys, schedules, lists or data,
> (2) compiled or collected,
> (3) for the purpose of identifying, evaluating, or planning the safety enhancement of . . . railway-highway crossings,
> (4) pursuant to 23 U.S.C. § 130.

"[If] any of these four factors are absent, the protections afforded by Section 409 are

_____

[1] The other sections of Title 23 mentioned in 23 U.S.C. § 409, sections 144 and 148, concern the Highway Bridge Replacement and Rehabilitation Program and the Highway Safety Improvement Program, respectively. Neither section is relevant to our discussion of the case at bar.

inapplicable regardless of whether it is the defendant or plaintiff who wishes to use the documents." *Hargrove v. Mo. Pac. R.R. Co.*, 03-818, p. 9 (La.App. 3 Cir. 12/17/03), 861 So.2d 903, 909, *writ denied*, 04-187 (La. 3/26/04), 871 So.2d 349. Thus, with respect to the various discovery requests at issue here, unless all four *Palacios* factors are present, the trial court will not have committed legal error in ruling that the documents requested were not protected by 23 U.S.C. § 409 privilege.

We will address each of the categories of documents that are the objects of the DOTD's objections in turn.

## Bates Page Numbers 463, 464, 403, 404, 505, 506, 633, 82, 119, 397-402, 421, 431, 617, 636

The DOTD first argues that certain items of correspondence sent by the Mayor of Vinton, Mr. Charles C. Coppels, to certain employees of the DOTD—specifically, Mr. Merlin Pistorius, Mr. P. J. Frederick, and Mr. Shrewsberry—were improperly deemed discoverable by the trial court. We agree.

In support of the applicability of 23 U.S.C. § 409 privilege, the DOTD cites *Long v. State ex rel. Department of Transportation & Development*, 04-485 (La. 6/29/05), 916 So.2d 87. There, the supreme court was asked to decide whether letters prepared by the mayor of Bonita, Louisiana, and sent to the DOTD were protected by 23 U.S.C. § 409. In finding that the privilege did apply to those letters, the *Long* court reasoned:

> The mayor agreed that the local government would provide pavement markings and signs as required, and his commitment to do so is contained in Letter 3.
> Hence, we find these three letters represent information necessary for the commencement of the upgrade for this roadway/railroad crossing, and thus, the letters effectuate the purpose of the federal safety program. Taken as a whole, and in the context of the framework of the purpose of § 409, we find the letters were compiled and collected by the

5

> DOTD for purposes related to funding through § 130, a federal safety program. Thus we find the letters are protected from discovery and are inadmissible under 23 U.S.C. § 409.

*Id.* at 100.

In the instant case, for purposes of 23 U.S.C. § 409 privilege, the letters written by Mayor Coppels mirror almost exactly those at issue in *Long*. As in *Long*, the letters in this case represent Mayor Coppels' agreements to either provide or maintain pavement markings and signs for the purpose of effectuating the re-opening of the railway crossing in question. As such, the letters stand as data compiled or collected by the DOTD for the purpose of planning the safety enhancement of railway-highway crossings, pursuant to 23 U.S.C. § 130, and are thus protected from discovery by the 23 U.S.C. § 409 privilege.

The validity of our conclusion is bolstered by the fact that, although the documents that are the object of this objection were deemed discoverable by the trial court, the trial court elsewhere deemed exact copies of those documents to be protected by 23 U.S.C. § 409. Further, while the letters bearing Bates Page Numbers 463 and 464 were not elsewhere deemed privileged, the text of those letters is virtually identical to that of documents labeled Bates Page Numbers 584, 596, and 604, which the trial court deemed were protected by 23 U.S.C. § 409. Thus, in accordance with *Long* and the mandate of 23 U.S.C. § 409, we hold that the above-referenced documents are privileged, and thus exempt from discovery.

**Bates Page Numbers 487-494, 631-632**

The DOTD next argues that certain copies of a line-item cost estimate for the installation of a crossing warning system are subject to the 23 U.S.C. § 409 privilege. We agree. These estimates qualify as reports or data, compiled or collected by

6

DOTD, for the purpose of planning the safety enhancement of the railway-highway crossing in question, pursuant to 23 U.S.C. § 130. Accordingly, we hold these documents to be protected from discovery.

**Bates Page Number 474**

The DOTD next argues that the trial court erred in allowing discovery of a letter, dated April 15, 1997, in which Mayor Coppels informs Mr. Shrewsberry that the Eddy Street railway-highway crossing was closed and requests the DOTD's assistance in re-opening the crossing. We agree.

As with the documents discussed regarding the DOTD's previous objection, the document at issue here qualifies as a report or data, compiled or collected by the DOTD, for the purpose of evaluating or planning the safety enhancement of the railway-highway crossing in question, pursuant to 23 U.S.C. § 130. Further, as with certain other documents excluded from 23 U.S.C. § 409 protection by the trial court, exact copies of the letter—labeled Bates Numbers 15 and 16—were elsewhere deemed by the trial court to be privileged. Thus, we hold this document to be privileged under 23 U.S.C. § 409.

**Bates Page Numbers 618-620**

The DOTD further argues that three letters, dated May 6, 1997, were improperly denied the protection of 23 U.S.C. § 409. In these letters, Union Pacific Director of Washington Affairs, Mr. Michael Rock, informs United States Senator Mary Landrieu, United States Senator John Breaux, and United States Representative Chris John of the closing of the Eddy Street railway-highway crossing, and advises them that the DOTD has the prospect of re-opening the crossing under active consideration. The DOTD contends that the trial court committed legal error when

it ruled that these documents were not subject to the 23 U.S.C. § 409 privilege. We disagree.

While the letters at issue here arguably satisfy the first two prongs of *Palacios* as reports or data that have been compiled or collected, there is nothing in the letters to indicate that the purpose of such collection was to identify, evaluate, or plan the safety enhancement of the Eddy Street railway-highway crossing. By compiling the letters, the state in no way uncovered a new safety problem, underwent analysis geared toward understanding the nature of an already-identified safety problem, nor formulated a plan of action for resolving a safety problem or otherwise increasing the safety of a railway-highway crossing. On the contrary, it appears that the purpose of compiling or collecting these letters merely was to maintain a record of Union Pacific's having informed Senator Landrieu, Senator Breaux, and Congressman John of the closing of the crossing. As such, we must hold that the trial court did not commit legal error in ruling that these letters were discoverable.

**Bates Page Numbers 37-47**

Next, the DOTD contends that the trial court erred in ruling that several documents—including certain handwritten notes, memos, and maps—were discoverable. We agree, in part.

The notes, memos, and maps in question qualify as reports, lists, or data compiled or collected for the purpose of evaluating or planning the safety enhancement of railway-highway crossings, pursuant to 23 U.S.C. § 130. Thus, these documents are protected from discovery by the 23 U.S.C. § 409 privilege. However, the documents bearing Bates Numbers 42, 44, and 45 are the letters to Senator Landrieu, Senator Breaux, and Congressman John discussed in reference to the

8

DOTD's previous objection which we have already held to be discoverable.

**Bates Page Numbers 128, 135-136**

The DOTD argues that copies of certain email correspondence between Union Pacific employees, Mr. David Peterson (hereinafter "Mr. Peterson"), Manager of Industry Projects for Union Pacific; Mr. Brent Waquespack; Mr. Dale Keifels (hereinafter "Mr. Keifels"); and Mr. Will Franks, dated May 30, 1997, and June 4, 1997, are protected by 23 U.S.C. § 409. We agree.

The emails in question discuss the arrangements necessary to reopen the Eddy Street crossing, including discussions regarding the specifications called for by the project and estimates of the labor costs associated with the project. As such, the emails qualify as reports compiled for the purpose of evaluating and planning the safety improvements to the Eddy Street railway-highway crossing, pursuant to 23 U.S.C. § 130. Therefore, these documents are subject to the 23 U.S.C. § 409 privilege.

**Bates Page Numbers 80-81, 107-113, 117-118, 125-127, 129, 139, 419-420, 429-430, 565-566, 615-616**

The DOTD next contends that several copies of a June 3, 1997, letter from Mr. William Temple, Chief of the Maintenance Division of the DOTD, to Mr. Peterson are privileged under 23 U.S.C. § 409. In this letter, Mr. Temple informs Mr. Peterson that the Eddy Street crossing has been closed and directs him to make arrangements for Union Pacific to install a new crossing and remove the road closure barriers there. The DOTD argues that the trial court committed legal error when it ruled that these documents were not subject to the 23 U.S.C. § 409 privilege. We disagree.

Assuming that the letter in question qualifies as a report that has been compiled

9

or collected, the DOTD again encounters trouble in satisfying the third prong of the *Palacios* test. Here, it does not appear that the letter at issue was compiled or collected for the purpose of identifying, evaluating, or planning the safety enhancement of the Eddy Street railway-highway crossing. Rather, it seems clear that at the time this letter was collected, the safety enhancement of the Eddy Street crossway had already moved past the planning stage and into the implementation stage. As such, this letter fails to satisfy the requirements of *Palacios*.

By way of counterargument, the DOTD argues that there is no prohibition in *Palacios* against affording 23 U.S.C. § 409 protection to documents compiled during the implementation stage of a safety enhancement plan. In effect, the DOTD argues that because safety evaluation of railway-highway crossings is an ongoing process, the applicability of 23 U.S.C. § 409 is not strictly foreclosed the moment that work begins on a particular project. Even assuming that proposition to be correct, the fact that 23 U.S.C. § 409 *may* apply after work has begun on a safety enhancement project does not relieve the party asserting that privilege from the burden of showing that the document in question meets the four-fold requirements of *Palacios*. Here, although Mr. Temple's letter could have satisfied *Palacios* had it reflected a purpose of identifying, evaluating, or planning the safety enhancement of the Eddy Street crossing, the text of the letter reflects no such purpose. On the contrary, rather than discussing the nature of the safety problem or weighing the merits of some aspect of the planned enhancement, the letter merely directs Union Pacific to begin installation of a new crossing along parameters already determined by the DOTD. Thus, we hold that the trial court did not commit legal error in ruling that these documents were not protected by the 23 U.S.C. § 409 privilege.

10

**Bates Page Numbers 600, 627, 123, 131-134, 599, 137, 138, 141, 598**

The DOTD argues that two copies of the Project Notice for Railway-Highway Master Agreement, dated July 18, 1996, are protected from discovery by 23 U.S.C. § 409. We disagree. The document in question merely authorizes Union Pacific to install two automatic flashing light signals at the Horridge Street crossing and to close the Eddy Street crossing. In no way was this document compiled or collected for the purpose of identifying, evaluating, or planning the safety enhancement of either crossing, and thus it is not protected by 23 U.S.C. § 409.

The DOTD also argues that several copies of the Plan Change and/or Special Agreement and accompanying memorandum, dated June 19, 1997, are protected from discovery under 23 U.S.C. § 409. We agree. Here, although the Plan Change document in question requires five signatures in order to be effective, the document contains only one such signature. As such, rather than reflecting the implementation of a change that had already been decided upon before the document was compiled or collected, the document instead represents the planning stage of such a project. In effect, these copies lend credence to the DOTD's position that because planning of safety enhancement projects is an ongoing process that can continue into the implementation stage, the applicability of 23 U.S.C. § 409 may extend past the beginning of work on a safety enhancement project. Because these copies were compiled or collected for the purpose of planning the safety enhancement of Eddy Street, they are protected from discovery by the 23 U.S.C. § 409 privilege.

Similarly, several copies of transmittal coversheets and letters forwarding the Plan Change and/or Special Agreement to Union Pacific for execution and return to the DOTD are also protected by 23 U.S.C. § 409. These documents were compiled

11

or collected for the purpose of planning the safety enhancement of the Eddy Street railway-highway crossing, pursuant to 23 U.S.C. § 130. Thus, they are subject to the 23 U.S.C. § 409 privilege.

**Bates Page Numbers 409, 495, 496, 448-456**

The DOTD contends that the trial court committed legal error in allowing discovery of certain printouts from the DOTD's database, in violation of 23 U.S.C. § 409. We agree. The documents at issue here appear to reflect data compiled for the purpose of facilitating all stages of the safety enhancement process—including identification, evaluation, planning, and implementation. To the extent that information concerning the identification, evaluation, and planning of the Eddy Street and Horridge Street projects could be shielded practicably from discovery, allowing discovery solely of information not related to that prohibited subject matter would be ideal. However, in the absence of such an arrangement, we must hold that these documents are protected by the 23 U.S.C. § 409 privilege, and thus they are not subject to discovery.

**Bates Page Numbers 183-186, 199, 222-223, 189, 196, 200, 205, 213, 215, 224-225, 563**

The DOTD next contends that several copies of a letter, dated April 15, 2003, from Mayor David Riggins to Mr. Shrewsberry are protected from discovery by 23 U.S.C. § 409. We agree. In the letter in question, Mayor Riggins expresses opposition to re-closure of the Eddy Street crossing and proposes further discussion regarding funding for the crossing. As such, we hold that these copies stand as reports or data compiled or collected for the purpose of planning the safety enhancement of the Eddy Street crossing, pursuant to 23 U.S.C. § 130, and are thus

12

privileged under 23 U.S.C. § 409. This conclusion is bolstered by the fact that the trial court elsewhere deemed exact copies of the April 15, 2003, letter—bearing Bates Page Numbers 192, 216, and 564—to be protected by 23 U.S.C. § 409.

The DOTD further argues that copies of letters from Mayor Riggins to Senators Breaux and Landrieu, dated April 28, 2003, are privileged under 23 U.S.C. § 409. We agree. These letters express Mayor Riggins' opposition to the closing of any crossings in the Town of Vinton and request federal assistance for funding the crossings. Therefore, these letters qualify as reports of data compiled or collected for the purpose of evaluating or planning the safety enhancement of railway-highway crossings in the Town of Vinton, pursuant to 23 U.S.C. § 130. They are thus privileged under 23 U.S.C. § 409.

The DOTD also argues that the trial court erred in ruling that several copies of a letter from Mayor Riggins to Mr. Shrewsberry, dated May 27, 2003, were discoverable. We agree. The letter in question details Mayor Riggins' offer, on the behalf of the Town of Vinton, to contribute up to fifty percent of the cost of installing the Eddy Street crossing. Thus, this letter is protected from discovery under 23 U.S.C. § 409, as it is a report or data compiled or collected for the purpose of evaluating or planning the safety enhancement of the Eddy Street crossing.

**Bates Page Numbers 193-194, 204, 238-239, 203, 211, 235-237**

The DOTD further contends that the trial court erred in ruling that copies of a series of letters were not protected by 23 U.S.C. § 409. We agree. These letters consist of correspondence from Senator Landrieu to Mr. Samuel Reid of the Department of Transportation, dated May 22, 2003; from Mr. Allan Rutter of the Federal Railroad Administration to Senator Landrieu, dated August 21, 2003; from

13

Senator Breaux to Mr. Sean O'Hollaran (hereinafter "Mr. O'Hollaran") of the United States Department of Transportation, dated May 21, 2003; and from Mr. Rutter to Senator Breaux, dated August 21, 2003. These letters meet the requirements for protection under 23 U.S.C. § 409: they are reports or data compiled or collected for the purpose of evaluating or planning the safety enhancements of the railway-highway crossings in the Town of Vinton, pursuant to 23 U.S.C. § 130. Thus, they are subject to the 23 U.S.C. § 409 privilege.

**Bates Page Numbers 242-245, 561-562, 333-334**

The DOTD argues that copies of a DOTD transmittal slip from Mr. Temple to Mr. Karl Finch, dated June 13, 2006, along with attached maps and handwritten notes regarding the results of a diagnostic review of the Eddy Street crossing performed by DOTD, are protected under 23 U.S.C. § 409. We agree. These documents are reports, surveys, or data compiled for the purpose of evaluating and planning the safety enhancement of the Eddy Street crossing, pursuant to 23 U.S.C. § 130. Thus, they are protected from discovery.

The DOTD also contends that copies of email correspondence between Mr. Shrewsberry, Mr. Mark Suarez, Mr. John C. Diaz, and Congressman John, dated January 8, 2007, are protected under 23 U.S.C. § 409. We agree. These emails are reports compiled or collected for the purpose of evaluating and planning the safety enhancement of railway-highway crossings in the Town of Vinton, and they are thus privileged under 23 U.S.C. § 409.

**Bates Page Numbers 124, 638**

Finally, the DOTD argues that copies of a single page from a survey of the railway-highway crossings in Calcasieu Parish should be excluded from discovery,

14

pursuant to 23 U.S.C. § 409. We agree. These copies are surveys that were compiled for the purpose of evaluating and planning the safety enhancement of railway-highway crossings in Calcasieu Parish, including the two crossings relevant to the case at bar. Further, these surveys were compiled for the purpose of complying with 23 U.S.C. § 130(d): "Each State shall conduct and systematically maintain a survey . . . ." Thus, the survey is protected from discovery by 23 U.S.C. § 409.

**CONCLUSION:**

For the above-stated reasons, this court affirms the interlocutory ruling of the trial court with respect to the discoverability of the May 6, 1997 letters from Mr. Rock to Senator Landrieu, Senator Breaux, and Congressman John; the June 3, 1997, letter from Mr. Temple to Mr. Peterson; and the July 18, 1996 Project Notice for Railway-Highway Master Agreement. As to all other documents asserted in this writ application to be privileged under 23 U.S.C. § 409, we reverse the ruling of the trial court. Costs are to be shared by the DOTD, BNSF, and Union Pacific.

**AFFIRMED IN PART; REVERSED IN PART.**